Ashley Farrell Pickett (SBN 271825)
ashley.farrellpickett@gtlaw.com
Oscar E. Peralta (SBN 335450)
oscar.peralta@gtlaw.com
**GREENBERG TRAURIG, LLP**
1840 Century Park East, Suite 1900
Los Angeles, California 90067
Tel:    (310) 586-7700
Fax:    (310) 586-7800

Attorneys for Defendants
Yves Saint Laurent America, Inc. and
Kering Americas, Inc.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLE COUTEE, an individual, <br><br> Plaintiff, <br><br> v. <br><br> YVES SAINT LAURENT AMERICA, INC., a corporation; KERING AMERICAS, INC., a corporation; and DOES 1 through 10 inclusive, <br><br> Defendants. | Case No. <br><br> **DEFENDANTS' NOTICE OF REMOVAL PURSUANT TO 28 U.S.C. SECTIONS 1332, 1367, AND 1446** <br><br> Removed from Riverside County Superior Court – Case No. CVRI2501705 <br><br> [*Filed concurrently with Civil Cover Sheet, Corporate Disclosure Statement, and Certificate of Interested Parties*] |

NOTICE OF REMOVAL

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HER COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendants Yves Saint Laurent America, Inc. and Kering Americas, Inc. ("Defendants") hereby remove the above-entitled action, *Nicole Coutee v. Yves Saint Laurent America, Inc., et al.*, Case No. CVRI2501705, from the Superior Court of the State of California, County of Riverside to the United States District Court for the Central District of California. This Court has original jurisdiction over this action under 28 U.S.C. § 1332(a) because complete diversity of citizenship exists and the amount in controversy exceeds $75,000, exclusive of interest and costs. Accordingly, this action is removable under 28 U.S.C. §§ 1441 and 1446. The following is a short and plain statement of the grounds for removal pursuant to 28 U.S.C. § 1446(a). If the Court requires that Defendant prove the facts alleged in this pleading, or to otherwise establish jurisdiction, Defendant is prepared to do so.[1]

## BACKGROUND

1.      On March 24, 2025, Plaintiff Nicole Coutee ("Plaintiff") filed a Complaint against Defendants in the Superior Court of the State of California, County of Riverside, entitled *Nicole Coutee v. Yves Saint Laurent America, Inc., et al.*, Case No. CVRI2501705 ("State Court Action"). Plaintiff asserts the following purported causes of action premised on alleged violations of the California Labor Code and common law: (1) wrongful termination; (2) whistleblower retaliation; (3) failure to pay wages; (4) failure to pay

---

[1] A notice of removal "need not contain evidentiary submissions." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 551 (2014); *see Janis v. Health Net, Inc.*, 472 F. App'x 533, 534 (9th Cir. 2012) ("Nothing in 28 U.S.C. § 1446 requires a removing defendant to attach evidence of the federal court's jurisdiction to its notice of removal. Section 1446(a) requires merely a 'short and plain statement of the grounds for removal.'"). Rather, as the Supreme Court has clarified, "if the plaintiff contests the defendant's allegation . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee,* 135 S. Ct. at 553-54.

NOTICE OF REMOVAL

minimum wage; (5) failure to pay overtime; (6) failure to authorize and permit meal breaks; (7) failure to authorize and permit rest breaks; (8) failure to provide accurate wage statements; and (9) failure to pay wages at termination. A true and correct copy of the Complaint is attached hereto as **Exhibit A**.

<u>**VENUE**</u>

2.      The action was filed in the Superior Court of the State of California for the County of Riverside. Venue properly lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 84(c), 1391, and 1441(a).

**<u>COMPLIANCE WITH STATUTORY REQUIREMENTS</u>**

3.      In accordance with 28 U.S.C. section 1446(a), true and correct copies of all pleadings, process, and orders in the State Court Action file (except for the Complaint which is Exhibit A) are attached hereto as **Exhibit B**.

4.      In accordance with 28 U.S.C. section 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers will be served on Plaintiff's counsel of record and filed with the Clerk of the Riverside County Superior Court. Therefore, all procedural requirements under 28 U.S.C. section 1446 have or will be satisfied.

<u>**TIMELINESS OF THE REMOVAL**</u>

5.      This removal is timely. Under 28 U.S.C. § 1446(b), a defendant must remove an action "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." This thirty-day time limit begins to run only upon service of process. *Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 347-348 (1999) ("[A] named defendant's time to remove is triggered by simultaneous service of the summons and complaint . . . ."). Defendants were served on April 16, 2025. Accordingly, this removal is timely pursuant to 28 U.S.C. § 1446(b).

<u>**JURISDICTION**</u>

6.      **Basis of Original Jurisdiction – Diversity of Citizenship Exists**. Defendant

3

NOTICE OF REMOVAL

has a right to remove the State Court Action on the ground that this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a), and is removable pursuant to the provisions of 28 U.S.C. § 1441(b), because: (1) it is a civil action between citizens of different states, and (2) the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs.

7. **Plaintiff Is a Citizen of California**. For diversity purposes, an individual's citizenship is determined by the individual's domicile. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A person's domicile is her permanent home, where she resides with the intent to remain or to which she intends to return. *See Lew v. Moss,* 797 F.2d 747, 749 (9th Cir. 1986). It is widely accepted among courts in the Ninth Circuit that a party with the burden of proving citizenship may rely on the presumption of continuing domicile, which provides that, once established, a person's state of domicile continues unless rebutted with sufficient evidence of change. *See, e.g.*, *Mondragon v. Cap. One Auto Fin.*, 736 F.3d 880, 885-86 (9th Cir. 2013). And courts treat a person's residence as prima facie evidence of the person's domicile. *Id.* (citing *Anderson v. Watts*, 138 U.S. 694, 706 (1891) ("The place where a person lives is taken to be his domicile until facts adduced establish the contrary….")).

8. Plaintiff alleges that at the time of filing her Complaint on March 24, 2025, that she was a resident of California. [*See* Ex. A (Compl.), ¶ 1 ("Plaintiff, at all times relevant hereto, is and has been a resident of the State of California.").] Records kept in the ordinary course of business also identify Plaintiff's home address as being located in Banning, California. As a result, and because there is no evidence to the contrary, since the beginning of her employment and through the date she filed this action, Plaintiff has been domiciled in California and is therefore a citizen of California for purposes of this jurisdictional analysis. *See, e.g.*, *Adams v. W. Marine Prod, Inc.*, 958 F.3d 1216, 1221 (9th Cir. 2020) (in connection with removal to federal court, a person's residence constitutes evidence of domicile and continuing domicile in a state establishes citizenship "unless rebutted with sufficient evidence of change").

NOTICE OF REMOVAL

9.      **Defendants Are Citizens of Delaware and New York**. The citizenship of a corporation is both the state of its incorporation and the state of its principal place of business. 28 U.S.C. § 1332(c)(1). When determining a corporation's principal place of business for purposes of diversity jurisdiction, courts refer to the place where a corporation's officers direct, control, and coordinate the corporation's activities. *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). The principal place of business is where the corporation "maintains its headquarters – provided that the headquarters is the actual center of direction, control and coordination." *Id.*

10.     Defendant Yves Saint Laurent, Inc. ("YSL") is a corporation incorporated under the laws of Delaware. Its officers and directors, including the chief executive officer, chief financial officer, secretary, and many other executive officers and employees, work and direct its operations from the corporate headquarters located at 3 East 57th Street, New York, New York 10022. Thus, YSL is a citizen of Delaware and New York.

11.     Defendant Kering Americas, Inc. ("Kering") is a corporation incorporated under the laws of Delaware. Kering's President, its apex executive, works and directs its operations from the corporate headquarters located at 65 Bleecker Street, 2nd Floor, New York, New York 10012. Thus, Kering is a citizen of Delaware and New York.

12.     The defendants Plaintiff designates as Does 1 through 10 in the Complaint are fictitious defendants and are not parties to this action. Pursuant to 28 U.S.C. § 1441(b)(1), the citizenship of defendants sued under fictitious names is disregarded for determining diversity jurisdiction and cannot destroy the diversity of citizenship between the parties. *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998) (inclusion of "Doe" defendants in a state court complaint has no effect on removal). Indeed, federal courts, unlike California state courts, do not recognize the existence of Doe defendants. *See, e.g., Tolefree v. Ritz*, 382 F.2d 566, 567 (9th Cir. 1967). The existence of Doe defendants 1 through 10, therefore, does not deprive this Court of jurisdiction.

13.     Thus, with Plaintiff being a citizen of California, and Defendants being citizens of Delaware and New York, complete diversity of citizenship between the parties

5

NOTICE OF REMOVAL

exists within the meaning of 28 U.S.C. § 1332.

14. **Basis of Original Jurisdiction – The Amount in Controversy Exceeds $75,000**. The "amount in controversy" includes all relief claimed at the time of removal to which the plaintiff would be entitled if she prevails. *Chaves v. JPMorgan Chase & Co.*, 888 F.3d 413, 418 (9th Cir. 2018). The Supreme Court has affirmed that a notice of removal need only contain a "short and plain statement of the grounds for removal." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 551 (2014), citing 28 U.S.C. § 1446(a). Accordingly, a defendant need not submit evidence in support of a removal, but need only plausibly allege the amount in controversy exceeds $75,000.00. *See id.* ("[T]he defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court."). When a complaint is silent on the amount in controversy, a defendant can establish the amount by allegations in the complaint or by setting forth facts that the amount "more likely than not" exceeds $75,000.00. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996); *see also Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (factual allegations in the complaint, along with the types of damages plaintiff sought made it facially apparent that the amount in controversy exceeded the $75,000 jurisdictional amount). A defendant may also rely on a "chain of reasoning" that is based on "reasonable" "assumptions." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201–01 (9th Cir. 2015). "An assumption may be reasonable if it is founded on the allegations of the complaint." *Arias*, 936 F.3d 920 925 (9th Cir. 2019); *see also Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) ("[I]n *Arias* we held that a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of jurisdictional elements.") (quotations and citations omitted).

15. In addition, a plaintiff's "pre-litigation settlement letter can be used to establish the amount in controversy 'if it appears to reflect a reasonable estimate of the plaintiff's claims.'" *Davis v. Sw. Airlines Co.*, 2025 U.S. Dist. LEXIS 22911, at *8 (N.D. Cal. Feb. 7, 2025) (quoting *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002); *see*

*also James Dar, LLC v. OJCommerce, LLC*, 2021 U.S. Dist. LEXIS 171413, at *6 (C.D. Cal. Sep. 9, 2021) ("We reject the argument that Fed. R. Evid. 408 prohibits the use of settlement offers in determining the amount in controversy.").

### a. Plaintiff's Pre-Litigation Demand Shows the Amount in Controversy Exceeds $75,000.

16.     On March 4, 2025, Plaintiff sent Defendants' representatives a twenty-one page pre-litigation demand asserting that "total potential exposure" in this action ranged from $3,801,855 to $4,551,855. A true and correct copy of Plaintiff's March 4, 2025, pre-litigation demand is attached hereto as **Exhibit C**. Plaintiff's demand letter provides detailed calculations—supported by case and statutory citations—for her purported "retaliation, whistleblower & wrongful termination" damages which she claims include: "(1) economic damages, such as back pay, front pay, plus benefits and medical expenses; (2) compensatory damages, such as emotional distress; (3) one-way prevailing party attorneys' fees and costs; and (4) punitive damages." [Ex. C at pp. 12-14.] Similarly, as to Plaintiff's "wage and hour" damages, she describes her hourly rates of pay, the number of violations suffered, and the legal authority for calculating her alleged unpaid wages, meal/rest premiums, and statutory penalties. [*Id.* at pp. 14-16.]

17.     Put simply, Plaintiff's demand letter provides an extensive and detailed explanation for how she arrived at the damages estimates, including citations to facts, case law, jury verdicts, and other legal authorities. [*Id.* at pp. 12-20.] While Defendants vigorously dispute all liability, Plaintiff's meticulous demand letter establishes that there is *at least* $75,000 *at issue* in this case, and cannot now be disavowed to avoid removal. *See Soto v. Thermo Fisher Sci. (Asheville LLC)*, 2024 U.S. Dist. LEXIS 145830, at *14-15 (N.D. Cal. Aug. 15, 2024) ("[Plaintiff's] demand was supported by a *fourteen-page* spreadsheet breaking down hours worked, overtime owed, liquidated damages on overtime owed, interest on overtime owed, second meal breaks, liquidated damages on second meal breaks, and interest on those breaks *by the day* . . . This demand cuts against counsel's representation to the Court that 'this is a small wage and hour case *that will not*

NOTICE OF REMOVAL

*make it passed* [*sic*] *$75,000 any time soon*.'") (emphasis in original).

18.    For these reasons, Plaintiff's demand letter that claims "total potential exposure" in this action ranged from $3,801,855 to $4,551,855, confirms the amount in controversy exceeds $75,000.

### b. Setting Aside Plaintiff's Pre-Litigation Demand, Defendants Can Independently Establish the Amount in Controversy.

19.    **Lost Wages.** Plaintiff may recover compensatory damages for alleged violations of Labor Code section 1102.5 or for wrongful termination. *Lawson v. PPG Architectural Finishes, Inc.*, 12 Cal. 5th 703, 709 (2022) ("An employee injured by prohibited retaliation may file a private suit for damages."); *Summers v. City of Cathedral City*, 225 Cal. App. 3d 1047, 1050 (1990) ("[A] plaintiff may recover tort damages for wrongful termination only if the discharge was in contravention of public policy.").

20.    Plaintiff asserts two causes of action for purported "wrongful termination in violation of public policy" and "retaliation for refusing and/or complaining about illegal conduct in violation of Labor Code section 1102.5." [Ex. A ¶¶ 48-71.] On these claims, Plaintiff alleges she "has lost and will continue to lose, substantial earnings and fringe benefits and has suffered and/or will suffer other actual, consequential and incidental financial loses . . . ." [*Id.* ¶¶ 53, 66.]

21.    In determining the amount in controversy in an action involving lost wages, district courts separate lost wages into two categories: past wages—i.e., lost wages between the date of Plaintiff's termination and the date of removal—and future wages—i.e., lost wages between the date of removal and trial." *Thayer v. Securitas Security Services USA, Inc.*, 2021 U.S. Dist. LEXIS 66845, at *2 (C.D. Cal. Apr. 6, 2021). Both are appropriately considered on removal. *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018). As to future wages, courts typically consider an assumption that a trial will occur within one year from removal reasonable. *Pearson v. Walmart Assocs., Inc.*, 2024 U.S. Dist. LEXIS 30633, at *9 (C.D. Cal. Feb. 21, 2024).

22.    At the time of Plaintiff's termination on January 8, 2025, she was paid an

8

NOTICE OF REMOVAL

hourly rate of $20.50.  [Ex. A ¶ 14.] This yields an annual salary of $42,640, which is $820 per week. Plaintiff was terminated on January 8, 2025. [*Id.* ¶ 33.] Plaintiff's claim for past wages is therefore $14,760 ($820 *times* 18 weeks between termination and the date of removal). And Plaintiff's claim for future wages is $42,640 (Plaintiff's annual salary assuming trial within one year from the date of removal). Plaintiff's claim for lost wages therefore places at least **$57,220** in controversy.

23.    **Attorneys' Fees.** Plaintiff also seeks to recover attorneys' fees, as purportedly allowed by law. [*See* Ex. A ¶¶ 68, 79, 87, 99, 107, 121.] Plaintiff's claim for attorneys' fees must be included in the amount in controversy. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy.").

24.    The measure of such fees for determining the amount in controversy "should be the amount that can reasonably be anticipated at the time of removal, not merely those [fees] already incurred." *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1035 (N.D. Cal. 2002); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1011 n. 4 (N.D. Cal. 2002) ("While an estimate of the amount in controversy must be made based on facts known at the time of removal, that does not imply that items such as future income loss, damages, or attorneys' fees likely to be incurred cannot be estimated at the time of removal.").

25.    "Employment claims have been found to require substantial effort from counsel." *Garcia v. ACE Cash Express, Inc.*, 2014 U.S. Dist. LEXIS 76351, at *5 (C.D. Cal. May 30, 2014) (internal quotations omitted). Courts in this circuit have often found 100 hours to be a reasonable estimate of attorney time in employment cases at the removal stage. *See Adkins v. J.B. Hunt Transp., Inc.*, 293 F. Supp. 3d 1140, 1148 (2018) ("The court will consider a reasonable and conservative estimate of the attorney's fees at the time of removal would be $30,000, or $300/hr x 100 hours."); *Garcia v. Commonwealth Fin. Network*, 2020 U.S. Dist. LEXIS 220533, at *21 (S.D. Cal. Nov. 24, 2020) ("Based

9

NOTICE OF REMOVAL

on the Court's experience in similar cases, the Court finds that $30,000, or 100 hours of attorney's time multiplied by a billing rate of $300 per hour, is a reasonable and conservative estimate to litigate Garcia's wage and hour claims through trial."); *Sasso v. Noble Utah Long Beach, LLC*, 2015 U.S. Dist. LEXIS 25921, at *12 (C.D. Cal. Mar. 3, 2015) ("100 hours is an appropriate and conservative estimate."); *Skipple v. Pepsico Bev. Sales, LLC*, 2024 U.S. Dist. LEXIS 104682, at *4-5 (E.D. Cal. June 11, 2024) (citing *Adkins* and *Sasso* and concluding "that at least $30,000 in attorneys' fees is in controversy here.").

26.    In fact, Plaintiff in her demand letter estimated that her attorneys would seek "between $750,000 an $1,500,000" if Plaintiff prevails at trial. Therefore, a conservative estimate of attorneys' fees using a $300 hourly rate would add **$30,000** more to the amount in controversy.

27.    **Emotional Distress Damages.** Plaintiff also alleges that as a result of Defendants' purported retaliation she became "mentally upset, distressed, embarrassed, humiliated, and aggravated" and is entitled to "general damages for mental and physical distress." [*See* Ex. A ¶ 54, 67.] "Emotional distress damages may be considered when calculating the amount in controversy even when not clearly pled in the complaint." *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1034 (2002). Although Defendant disputes that Plaintiff is entitled to any such award, plaintiffs in employment cases have been awarded substantial sums in emotional distress damages. *See, e.g.*, *Yu v. Grifols Biologicals, Inc.*, No. BC620910 (Los Angeles Cty. Super. Ct. Nov. 15, 2017) (jury award of $285,785 for emotional distress in whistleblower retaliation case in which plaintiff claimed he saw unlawful, fraudulent activity taking place in the workplace, made internal complaints to his manager, and was unlawfully terminated from his employment by his manager in retaliation for making the complaints); *United States ex rel. Macias v. Pac. Health Corp.*, 2016 U.S. Dist. LEXIS 140760, at *33 (C.D. Cal. Oct. 7, 2016) (noting that while "emotional distress damages are warranted in whistleblower cases," Plaintiff was only entitled to $35,000 because she "was never physically threatened, did not face sexual

NOTICE OF REMOVAL

harassment, and did not suffer from dire financial straits."). Using the lowest of these awards as a conservative estimate of Plaintiff's potential emotional distress damages would add **$35,000** more to the amount in controversy.[2]

28.    **Punitive Damages.** Although there may be no statutory limit on the amount of punitive damages that are recoverable in this matter, the Supreme Court has stated that, "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *State Farm Mut. Auto Ins. Co. v. Campbell,* 538 U.S. 408, 425 (2003). District courts within the Ninth Circuit have deemed a 1:1 ratio of punitive damages to damages for lost or unpaid wages and benefits as "conservative" for purposes of assessing the amount in controversy. *See e.g.*, *Molina v. Target Corp.,* 2018 U.S. Dist. LEXIS 138316, at *10 (C.D. Cal. Aug. 14, 2018); *Jackson v. Compass Grp. USA, Inc.,* 2019 U.S. Dist. LEXIS 129001, at *6 (C.D. Cal. July 31, 2019). Thus, without conceding that an award of punitive damages would be warranted in this case, a 1:1 ratio of punitive damages to damages for lost wages would add another **$57,220** to the amount in controversy. This is below jury verdicts with substantial punitive damages awards in whistleblower retaliation cases. *See, e.g.*, *Almada v. HHCare, LLC*, No. CVPS2103064 (Riverside Cty. Super. Ct. November 29, 2023) (jury verdict awarding $500,000 in whistleblower retaliation case premised on alleged complaints of Labor Code violations).

29.    **Unpaid Overtime.** Unpaid overtime wages are properly considered in determining the amount in controversy. *See, e.g.*, *Rhoades v. Progressive Cas. Ins. Co., Inc.*, 410 Fed. Appx. 10, 11 (9th Cir. 2010) (amount of unpaid overtime properly considered in determining the amount in controversy). Plaintiff's Complaint alleges that

---

[2] This estimate is far below what ***Plaintiff*** believes she will recover in emotional distress damages. In her demand letter, and citing to various jury verdicts, she claims "Plaintiff may be awarded an emotional distress award well over the average range given the sympathetic nature of the claims and the mistreatment of Plaintiff. Emotional distress damages are assessed at **$500,000**." [Ex. C at pp. 13-14 (emphasis in original).]

NOTICE OF REMOVAL

"Defendant did not pay 1 ½ times the legal minimum hourly wage rate for all the hours worked over eight (8) hours in a work day and/or 40 hours in a work week . . . ." [Ex. A ¶ 95.]

30.    Although Plaintiff provides no pertinent information in the Complaint as to how much time she allegedly worked without proper compensation, her meticulous demand letter provides this information. In her demand letter,  she claims "Plaintiff worked approximately 12 weeks (from October 18, 2024 to January 8, 2025) at $20.50 per hour. Based on an hour of pay owed per day, Plaintiff is entitled to **$1,845** in unpaid overtime ((5 days a workweek x 12 workweeks) x ($30.75 overtime rate)." [Ex. C p. 14 (emphasis in original). Although Defendants dispute all liability, ***Plaintiff's*** calculations place $1,845 in controversy.

31.    **Meal and Rest Period Premiums.** Labor Code section 226.7(b) provides in pertinent part: "If an employer fails to provide an employee a meal or rest or recovery period . . . the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided." Unpaid meal and rest period premiums are properly considered in determining the amount in controversy. *See, e.g.*, *Andrade v. Beacon Sales Acquisition, Inc.*, 2019 U.S. Dist. LEXIS 171460, at *12-14 (C.D. Cal. Oct. 1, 2019) (amount of unpaid meal and rest period premiums considered when determining the amount in controversy; denying motion to remand).

32.    Plaintiff seeks to recover unpaid premiums for purported meal and rest period violations. [*See* Ex. A ¶ 105 ("Defendant's policy and practice was not to compensate Plaintiff with the full amount of pay due and owing as required by California Labor Code section 226.7 . . . ."); ¶ 112 ("Defendant failed to pay Plaintiff the full rest period premium due pursuant to California Labor Code section 226.7.").

33.    Although Plaintiff provides no pertinent information in the Complaint as to the rate at which she purportedly suffered meal and rest period violations, her meticulous demand letter supplies this information. In her demand letter, as to meal period premiums,

12

NOTICE OF REMOVAL

she claims she "will be entitled to **$1,230** ((5 days a workweek x 12 workweeks) x $20.50 hourly rate)." [Ex. C p. 15 (emphasis in original).] As to rest period premiums, Plaintiff claims she "will be entitled to **$1,230** ((5 days a workweek x 12 workweeks) x $20.50 hourly rate." [*Id.* (emphasis in original).] Although Defendants dispute all liability, ***Plaintiff's*** calculations place an additional $2,460 in controversy.

34. **Wage Statement Penalties.** Plaintiff alleges that Defendants "intentionally and willfully failed to provide Plaintiff with complete and accurate wage statements . . . ." [Ex. A ¶ 120.] Plaintiff alleges that she is "entitled to recover from Defendant the greater of Plaintiff's actual damages caused by Defendant's failure to comply with California Labor Code § 226(e), [or] an aggregate penalty not exceeding four thousand dollars . . . ." [*Id.* ¶ 121.]

35. An employee who suffers "injury as  result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)." Lab. Code § 226(e)(2)(B).

36. Defendants estimate that between the start of Plaintiff's employment on October 18, 2024 and termination on January 8, 2025, she received approximately 6 wage statements during the relevant period. This places in controversy at least **$550** (1 wage statement *times* $50 initial penalty plus 5 wage statements *times* $100 subsequent penalties).

37. **Waiting Time Penalties.** If an employer intentionally fails to pay all wages due to an employee at the time of termination, or within 72 hours after resignation, then the wages "shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced," for a maximum of 30 calendar days. Lab. Code §§ 201–203.

38. To calculate waiting time penalties, an employee's daily rate of pay is

13

NOTICE OF REMOVAL

multiplied by a maximum of 30 days, depending on the length of delay in receipt of wages. *See Mamika v. Barca*, 68 Cal. App. 4th 487, 493 (1998) (holding that waiting time penalty is "equivalent to the employee's daily wages for each day he or she remained unpaid up to a total of 30 days"). Where final "wages [due] are alleged to have not been paid, the full thirty-days may be used" when estimating that amount in controversy. *Marentes v. Key Energy Servs. Cal., Inc.*, 2015 U.S. Dist. LEXIS 21377, at *23 (E.D. Cal. Feb. 23, 2015); *see also Crummie v. CertifiedSafety, Inc.*, 2017 U.S. Dist. LEXIS 168326, at *3 (N.D. Cal. Oct. 11, 2017) (when a plaintiff alleges final wages were not paid timely, it is "completely reasonable to assume waiting time penalties accrued to the thirty-day limit").

39.    Plaintiff claims that "Defendant intentionally and willfully failed to pay Plaintiff all wages, earned and unpaid, immediately upon discharge." [Ex. A ¶ 126.] Plaintiff worked an average of about 8 hours per workday, at an hourly rate of $22.50, resulting in an average daily wage rate of $180. Accordingly, this claim places in controversy at least **$5,400**, calculated as $180/day *times* 30 days.

40.    Based on the conservative calculations outlined above, the approximate total amount in controversy is as follows:

      a.  Lost wages – at least $57,220;

      b.  Attorneys' fees – at least $30,000

      c.  Punitive damages – at least $57,220;

      d.  Emotional distress damages – at least $35,000;

      e.  Unpaid overtime – at least $1,845;

      f.  Unpaid meal and rest period premiums – at least $2,460;

      g.  Wage statement violations – $550; and

      h.  Waiting time penalties – at least $5,400.

41.    These amounts total at least **$189,695** which exceeds the jurisdictional minimum. In light of Plaintiff's demand that claims "total potential exposure" in this action ranges from "$3,801,855 to $4,551,855," the amount in controversy is easily satisfied.

NOTICE OF REMOVAL

## NO ADMISSION

42. By removing this case, Defendants expressly admit no liability to Plaintiff and expressly reserve all procedural and substantive defenses to any and all claims for damages or penalties asserted by Plaintiff.

## CONCLUSION

43. Complete diversity of citizenship exists because Plaintiff is a citizen of California and Defendants are citizens of Delaware and New York. Furthermore, Plaintiff's claims exceed the amount in controversy requirement of $75,000. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1332, 1367, 1441, and 1446, and Defendants have properly removed the State Court Action to this Court.

Respectfully submitted,

Dated: May 16, 2025                    GREENBERG TRAURIG, LLP

By:   /s/ Ashley Farrell Pickett
Ashley Farrell Pickett
Oscar E. Peralta
Attorneys for Defendants
Yves Saint Laurent America, Inc. and
Kering Americas, Inc.

NOTICE OF REMOVAL